DOMINICK SIKORSKY, Respondent, *v.* MARTIN & WHITE COMPANY, Appellant.

Master and servant — negligence — action by employee to recover for injuries received from falling to ground from second floor of factory — judgment for plaintiff not sustained by evidence.

Where in a common-law action brought by an employee to recover for injuries received from falling to the ground from a bridge over an open space between the second floors of two buildings of a factory, while crossing such bridge after dark, there is no evidence either of the plaintiff or of any eye witness explaining the accident, and no sufficient evidence to support an allegation of the complaint that part of such bridge was unguarded by a rail, so that it is impossible to form a definite idea of how the accident happened, and, where, also, there is no evidence showing plaintiff's freedom from contributory negligence, but, on the other hand, evidence that he proceeded in darkness along a path with which he was not familiar and fell from some place the location of which was uncertain, it is reversible error to submit the case to the jury.

*Sikorsky* v. *Martin & White Co.*, 151 App. Div. 922, reversed.

(Argued March 4, 1914; decided March 24, 1914.)

33

## 514    SIKORSKY *v.* MARTIN & WHITE CO.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 26, 1912, affirming a judgment in favor of plaintiff entered upon a verdict.

The defendant operates a fertilizer factory on Barren Island. The plant consists of a large building known as the "mill building," and attached to three sides thereof were so-called sheds. One of these sheds, on the east side, was seventy-five feet wide east and west, and three hundred and fifty feet long north and south. In the southerly end of this shed there was a second floor about fourteen feet above the ground, extending about thirty-five feet towards the north, and at the southerly end of this second floor there was an office. There were tram car tracks running from the southerly end of the shed along the westerly side of this office, and thence through the entire length of the shed. Except for this limited space which was floored, and the space between the two lines of tram tracks, the interior of the shed was open from ground to roof. This second floor in the shed was connected with the second floor of the mill building, called the mixing room, by a bridge commencing at a point just west of the tracks and on a line about twenty feet north of the office. This bridge was about six and one-half feet in width and spanned an open space that measured about thirty-five feet. The mixing room in the mill building was about two and one-half feet higher than the flooring in the shed, thus causing a rather sharp incline on the bridge where it approaches the wall of the mill building. At a point where the westerly tram track reaches the bridge the track diverges to the west and passes the bridge on a diagonal line toward the mill building; and a few feet further north the track resumes a straight line and thus continues to the northerly end of the shed.

The plaintiff, who had been previously employed by the defendant, again obtained employment on the morn-

ing of the day of the accident. He was set at work in the mixing room in the mill building, carrying material in a wheelbarrow from the hot bins which were located on the west side of the mixing room to a dumping place toward the northerly end of that building. When he went to work in the morning he reached the second floor by a stairs in the shed near the office, and thence proceeded over the flooring to the bridge and across the bridge into the mixing room. The regular quitting time was half past five in the afternoon when a whistle was blown. For some reason, which is not explained, the plaintiff quit work about fifteen minutes before the blowing of the whistle and started toward the office, as he says, to deposit his time check. The other members of his gang did not leave with him. A few minutes later he was found lying on the ground floor of the shed at a point just north of the bridge overhead. The plaintiff did not explain how the accident happened, and there were no eye witnesses to it. He and all his witnesses, except the physicians, were Poles who were unfamiliar with our language and they testified through an interpreter. Their testimony is most confusing and about the only thing that seems to be definitely described by them is the location where the plaintiff was found after the accident. This they all stated to be just north of or underneath the bridge and to the west of the tram tracks. The defendant's witnesses locate the spot where the plaintiff was found at a distance, variously estimated, from six to fifteen feet north of the bridge.

The bridge connecting the second floor in the southerly end of the shed with the mill building had railings upon both sides. Upon the north side, according to the testimony of defendant's witnesses, where the east end of the bridge joins the flooring in the shed, there was also a railing extending a few feet along the tram tracks to the north, which here ran on a diagonal line and formed an acute angle at the northeast corner of the bridge. As

nearly as can be ascertained from the evidence adduced for the plaintiff, it tends to show that this railing at the northeast corner of the bridge extending along the tram tracks was not in place at the time of the accident, but was afterwards put back. The point where the plaintiff was found after his fall was almost directly beneath that corner of the bridge.

The sun had set at the time of the accident. The evidence of the plaintiff, and of all his witnesses, is to the effect that it was very dark at the time when the plaintiff quit work. It is to be inferred from the plaintiff's testimony that there were no lights in the building at the time of the accident, and that it was so dark that he had to grope with his hands to find his way.

The defendant's evidence upon this subject is to the effect that it supplied lanterns for the use of the workmen; that these were filled with oil and trimmed during the day in the oiling room, and in the afternoon were taken to the office, where any workman could get them; that it was the duty of its foreman to see that these lanterns were properly distributed when it was necessary to use them; and that the gang with which the defendant had been working on the day of the accident had one large lantern in the hot bin and two ordinary hand lanterns on the outside. There was also testimony that in addition to this the way to the dump was also lighted with lanterns hung on nails in the beams. It further appeared that a lighted lantern was hung in the vicinity of the office at the time of the accident, but whether this sufficiently lighted the bridge is not free from doubt. It was the duty of one of the defendant's foremen to supply the workmen with lanterns to enable them to perform their work.

The plaintiff testified that he had received no instructions concerning lights. There were times, according to the record, when night shifts worked on the premises, and when that was the case they went on at six o'clock: and

the lanterns which had been used by the day shift were left in the mixing room for the use of the men in the night shift. At the time of the accident there was no night work in the mixing room. Some of the men who worked with the plaintiff took their lanterns with them to the office on the evening of the accident.

The jury rendered a verdict for the plaintiff, and the judgment entered thereon was affirmed at the Appellate Division by a divided court.

*Bertrand L. Pettigrew* for appellant. Plaintiff failed to sustain the burden of showing that he was free from negligence contributing to the accident, but on the other hand the evidence in the case shows affirmatively that he was guilty of contributory negligence. (*Rohrbacher* v. *Gillig,* 203 N. Y. 413; *Pattison* v. *Livingston Amusement Co.,* 156 App. Div. 368; *Krug* v. *A. S. R. Co.,* 120 App. Div. 537; *Donnelly* v. *Katz,* 133 App. Div. 905; *Brugher* v. *Buchtenkirch,* 167 N. Y. 153.)

*Adolph Feldblum* and *Frank F. Davis* for respondent.

Werner, J. After a most painstaking examination of a very confusing and unsatisfactory record, we have reached the conclusion that the judgment for the plaintiff cannot be sustained. The plaintiff assumed the burden of proving the defendant's negligence and his own freedom from contributory negligence, and we think he has failed in both. Even the most liberal allowance for the ignorance of our language, exhibited by the plaintiff and his witnesses, does not help the plaintiff to establish his case by the required standards of proof.

The plaintiff sustained his injuries on the afternoon of December 29th, 1909. That he fell from the second floor of the shed to the ground floor is undisputed, and this is all that the evidence establishes with any degree of certainty. The specific allegation of defendant's negligence

is "that on the 29th day of December 1909, this plaintiff was upon the second floor of the said factory of the defendant hereinbefore specified, and in the usual and customary manner of so doing was going about his work and engaged in the duty of his employment; and while so acting was, without any fault or negligence on his part, but solely through the fault and negligence of the defendant in failing to guard a certain opening upon said floor, and in failing to properly light said floor, and in failing and neglecting to properly inspect said floor and its condition, and in failing to warn this plaintiff of the dangers and risks arising from said hole in said floor, caused the physical injuries sustained by the plaintiff to happen, in this, that said plaintiff while on said floor, without any fault on his part, and solely through the fault and negligence of the defendant, fell and was precipitated through the said hole in said floor to the ground on the floor below, and thereby sustained the physical injuries hereinafter specified." The inference which one would naturally draw from this allegation would be that there was an unguarded hole in the regular floor of the building through which the plaintiff fell to the ground floor; but this is in direct contradiction of the evidence which conclusively establishes that the building in which the plaintiff sustained his injuries was a so-called shed about twenty-five feet in height, seventy-five feet in width and three hundred and fifty feet in length, which was open from the ground to the roof, except a space of about thirty-five feet at the southerly end where there was a second floor on which there was an office accessible from below by means of stairs, and from the second floor of the main or "mill building" by a bridge which spanned an opening thirty-five feet in width. That this bridge was properly guarded by railings on both sides is established by all the evidence for both parties, and the only fact concerning which there is any controversy is whether there was a short railing running laterally from

the northeasterly corner of the bridge for a few feet along the westerly tram tracks. The weight of the evidence seems clearly to establish the existence of this lateral guard at the time of the accident, but even if we give to the plaintiff the benefit of every possible doubt which may exist on that score, we have still to dispose of the question whether there was any evidence which fairly sustains the allegations of the complaint.

The plaintiff testified that when he commenced work in the morning of the day of the accident he was shown up stairs to the office by the "boss," and from there he went across the bridge to the "mill building" where he was put at work at a "hot bin" with some other workmen. He went home to lunch at noon, crossing this bridge and recrossing it on his return. He worked until shortly after five o'clock, when it was dark. He testified that there were no lights at the bin where he had been at work, and that without waiting for the whistle to blow he quit work and started for the office to turn in his time check. He says that there were no lights on the way to the office and that it was so dark that he had to feel his way with his hands. He went on until he fell, but he did not know whether he had gone ten feet or one hundred feet, or whether he had turned to the right or the left.

In view of this testimony it is not surprising that the learned trial justice suggested to counsel that he had no definite idea how this accident happened, and that he would like to have the plaintiff state just what route he took when he left his work to go to the office, and just what happened. In reply to this suggestion from the court, counsel for the plaintiff stated that he would supply the desired information by other witnesses. This was manifestly impossible because the plaintiff was alone and there were no eye witnesses to the accident, and the fact remains that the indefiniteness in the plaintiff's case was not cleared up by other witnesses. The only thing that furnishes even a suggestion as to the manner in which the

accident happened is that the plaintiff was found lying on the ground floor, at or near a point below the northeasterly corner of the bridge. This is not enough to charge the defendant with negligence, and it distinctly fails to prove the allegations of the complaint.

Since this is an action at common law, it is our duty to pass upon the question whether the plaintiff has established, as matter of law, his freedom from contributory negligence. In this regard the evidence is even more strongly unfavorable to the plaintiff than the evidence relating to the defendant's alleged negligence. The plaintiff stopped work ten or fifteen minutes before quitting time. He does not explain why. He proceeded in the darkness, which was so dense that he had to use his hands, to feel his way, along a path with which he says he was not familiar, and continued until he fell from some place which neither he nor any of his witnesses have described. It needs no argument to show that, in these circumstances, the plaintiff has failed to establish his freedom from contributory negligence.

The foregoing views as to the defendant's negligence and the plaintiff's freedom from contributory negligence necessarily lead to the conclusion that the defendant's motion for a nonsuit should have been granted, and that the case should not have been submitted to the jury on any theory.

The judgment should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, HOGAN and MILLER, JJ., concur.

Judgment reversed, etc.